THOMAS H. ZELLERBACH (SBN 154557)
tzellerbach@orrick.com
DIANA M. RUTOWSKI (SBN 233878)
drutowski@orrick.com
CATHY C. SHYONG (SBN 288537)
cshyong@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:   +1-650-614-7400
Facsimile:   +1-650-614-7401

NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
405 Howard St.
San Francisco, CA 94105
Telephone:   +1-415-773-5700
Facsimile:   +1-415-773-5759

Attorneys for Plaintiff
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> MOBILE STAR LLC, a New York Limited Liability Company, and Does 1-50 <br><br> Defendants. | Case No. 3:16-cv-06001-WHO <br><br> **APPLE INC.'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION** <br><br> Dept:   Courtroom 2, 17th Floor <br> Judge: Hon. William H. Orrick <br> Date:   December 7, 2016 <br> Time:   2:00 p.m. |

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

**TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ............................................................................................................ 2
II.  Factual Background ........................................................................................................ 3
   A.   The Counterfeit Products .................................................................................... 3
   B.   Apple's Unsuccessful Attempts to Gain Mobile Star's Cooperation................... 7
III. THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION ............................ 8
   A.   Legal Standard .................................................................................................... 8
   B.   Discussion ........................................................................................................... 8
      1.   Apple is Likely to Succeed on the Merits. ............................................... 8
      2.   Apple's Reputation and Goodwill will Suffer Irreparable Harm............. 12
      3.   The Balance of Equities Favors Apple. .................................................. 13
      4.   The Public Interest will be Served if Counterfeit Sales Cease............... 14
IV.  CONCLUSION................................................................................................................ 14

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- i -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adidas Am., Inc. v. Soccer & Soccer, Inc.*,
   No. CV 13-7148-GW(VBKx), 2013 WL 11323120 (C.D. Cal. Oct. 25, 2013) ....................... 13

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ............................................................................................ 10, 11

*Bridgestone Brands, LLC v. Dastgah*,
   No. 16-CV-00906-BLF, 2016 WL 1070670 (N.D. Cal. Mar. 18, 2016) ........................ 9, 13, 14

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ............................................................................................ 9, 10

*eBay, Inc. v. Bidder's Edge, Inc.*,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) .................................................................................. 13

*Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prods.*,
   No. SA CV 16-0969-DOC, 2016 WL 3545524 (C.D. Cal. June 28, 2016) ...................... 12, 13

*Maxim Integrated Products, Inc. v. Quintana*,
   654 F. Supp. 2d 1024 (N.D. Cal. 2009) ............................................................................ 13, 14

*Microsoft Corp. v. Buy More, Inc.*,
   136 F. Supp. 3d 1148 (C.D. Cal. 2015) ................................................................................... 10

*Otter Products LLC v. Ace Colors Fashion, Inc.*,
   No. 2:14-cv-00141-ODW, 2014 WL 1512189 (C.D. Cal. Apr. 15, 2014) .............................. 10

*Phillip Morris USA Inc. v. Shalabi*,
   352 F. Supp. 2d 1067 (C.D. Cal. 2004) ............................................................................. 9, 10

*Rolex Watch U.S.A., Inc. v. Watch Empire LLC*,
   No. CV 13-09221-SJO, 2015 WL 9690322 (C.D. Cal. Sept. 29, 2015) ................................. 10

*S & C Elec. Co. v. Contreras*,
   No. C 11-00383 WHA, 2011 WL 673740 (N.D. Cal. Feb. 17, 2011) ...................................... 8

*Sprint Nextel Corp. v. Thuc Ngo*,
   No. C-12-02764 CW (EDL), 2012 WL 4127296 (N.D. Cal. Sept. 18, 2012) ......................... 13

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
   846 F. Supp. 2d 1063 (N.D. Cal. 2012) ............................................................................. 8, 12

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ................................................................................................................ 10

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- ii -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
    No. C 12-2582 CW, 2012 WL 2343670 (N.D. Cal. June 20, 2012) ................................... 2, 10

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................................. 8, 14

**Statutes**

15 U.S.C. §1057(b) ................................................................................................................... 9

15 U.S.C. § 1065 ..................................................................................................................... 10

15 U.S.C. § 1115(a) .................................................................................................................. 9

15 U.S.C. § 1127 ....................................................................................................................... 9

Lanham Act Sections 32 and 43(a) ..................................................................................... 8, 10

**Other Authorities**

Federal Rule of Civil Procedure 65 .......................................................................................... 1

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- iii -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that the following Motion For Preliminary Injunction will be heard on December 7, 2016, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2, 17th Floor of this Court located at 450 Golden Gate Avenue, San Francisco, California, the Honorable William H. Orrick presiding.

Plaintiff Apple Inc. will, and hereby does, move this Court for an order granting a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, as set forth in the proposed order filed in support of this Motion.  This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declarations of David Doan, Marianne David, Robert Pearson, Robert N. Potter, Paul Stone-Jansen, and Nathan Shaffer, and the materials attached thereto; the record in this matter; and such other and further papers, evidence, and argument as may be submitted in connection with this Motion.

Dated: October 19, 2016              Orrick, Herrington & Sutcliffe LLP

By: _____*/s/ Thomas H. Zellerbach*_____
THOMAS H. ZELLERBACH
Attorneys for Plaintiff
Apple Inc.

## I. INTRODUCTION

Apple Inc. ("Apple") requests that this Court issue a preliminary injunction preventing Defendant Mobile Star LLC ("Mobile Star") from continuing to sell or distribute dangerous and counterfeit Apple-branded power products such as power adapters and charging/syncing cables ("Apple power products") as well as other counterfeit Apple products that Apple has recently confirmed Mobile Star is distributing. Counterfeit Apple power products pose an immediate risk to public safety. Consumers who have been duped into buying them have experienced and reported serious problems such as overheating and fire. Apple's own analysis and tests of Mobile Star's counterfeits bought from Amazon.com LLC ("Amazon.com") and Groupon, Inc./Groupon Goods, Inc. ("Groupon") confirm they can overheat, catch fire, and subject users to potentially lethal electric shock during normal use.

All four factors for equitable relief are met in this case. First, Apple is likely to prevail on the merits because (1) Apple has incontrovertible evidence that the power products it bought from Amazon.com are counterfeit, (2) Amazon.com has identified Mobile Star as the primary source of the counterfeit Apple power products that Apple purchased, (3) Apple has incontrovertible evidence that Apple power products it purchased from Groupon are counterfeit, (4) Groupon recently identified Mobile Star as the source of the counterfeit products, (5) an Apple investigator has recently purchased other counterfeit Apple products directly from Mobile Star, and (6) counterfeit products are, under applicable law, inherently likely to confuse consumers, *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL 2343670, at *14 (N.D. Cal. June 20, 2012), and, in any event, have actually confused consumers here. Second, Apple is likely to suffer irreparable injury because consumers have already complained that the exact kind of counterfeit Apple power products distributed by Mobile Star overheat, smolder, and catch fire, and Apple's tests confirm Mobile Star's counterfeits are prone to create all of these hazards.[1] If Mobile Star is not enjoined from distributing counterfeit Apple products, Apple's goodwill and

---

[1] Consumer product safety organization UL recently issued a white paper that sets forth in detail the dangers associated with counterfeit Apple power products, concluding that counterfeit power products "[i]n most cases … lack the safety features necessary to protect users from shock and fire hazards," which can pose "a risk of lethal electrocution." UL, "Counterfeit iPhone Adapters," September 16, 2016, http://library.ul.com/wp-content/uploads/sites/40/2016/09/10314-CounterfeitiPhone-WP-HighRes_FINAL.pdf, at 2.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

1  reputation will continue to be damaged as consumers associate problems and complaints about
2  counterfeit Apple products with Apple.  Third, the balance of hardships tips strongly in Apple's
3  favor because the damage to Apple's reputation is far more serious than any loss of revenue
4  Mobile Star might suffer.  Fourth, public policy favors equitable relief because consumers are not
5  only being cheated by the sale of counterfeit Apple products supplied by Mobile Star, but they
6  may be physically endangered as well.

## II.   FACTUAL BACKGROUND

### A.   The Counterfeit Products

Apple produces some of the most innovative, recognizable, and popular consumer products in history, including the iPhone®, iPad®, iPod®, and MacBook®.  *See* Declaration of Marianne David ("David Decl.") ¶ 3.  Apple's products are a frequent target of counterfeiters seeking to trade on the popularity and reputation of Apple's high-quality products, and Apple frequently monitors sales channels such as Amazon's online marketplace for counterfeits.  David Decl. ¶ 6.  The sale of counterfeit Apple products on Amazon.com is rampant.  As part of its brand protection and enforcement program, Apple purchased a number of power products advertised on Amazon.com as genuine Apple products from December 2015 through June 2016.  Each of these Apple power products was sourced by Amazon.com, offered for sale by Amazon.com under an Amazon.com Standard Identification Number ("ASIN"),[2] advertised by Amazon.com on its website, and sold directly to consumers by Amazon.com.  *See* Declaration of David Doan ("Doan Decl.") ¶¶ 3, 6-43.  Each of the products Apple bought from Amazon.com was sold in connection with and marked with or comprised a registered trademark owned by Apple.  Apple carefully examined the products and determined they were fakes.  *Id.* ¶¶ 6-43; Declaration of Robert Pearson ("Pearson Decl.") ¶¶ 8-9.  In response to Apple's request to Amazon.com to identify the source of the counterfeit products purchased by Apple, Amazon.com informed Apple that 12 of the 22 products identified by Apple as counterfeit had been sourced from Mobile Star.  David Decl. ¶ 9, Ex. O.[3]

---

[2] Because every unique type of product sold on Amazon.com is assigned a specific ASIN, Apple's reference to ASINs includes the products sold under those ASINs.
[3] Amazon.com also identified two other sources of the counterfeit products who are currently cooperating with Apple.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

Apple also purchased a number of Apple-branded products from online retailer Groupon. Doan Decl. ¶ 55. The products were sold in bundles associated with Groupon SKU/UPC numbers 885909627306[4] and 885909627450.[5] Apple carefully examined the products and determined that they too were fakes. *Id.* ¶¶ 57, 60; Pearson Decl. ¶¶ 8-9. Like the Amazon-purchased products, each of the products Apple bought from Groupon was sold in connection with and marked with or comprised a registered trademark owned by Apple. Doan Decl. ¶¶ 56-58. In response to Apple's requests for information, Groupon recently informed Apple that all of the Apple power products associated with Groupon SKU/UPC numbers 885909627306 and 885909627450 and the corresponding Groupon product listings through which Apple purchased counterfeits had been sourced from Mobile Star. Declaration of Robert N. Potter ("Potter Decl.") ¶¶ 15-16.

The safety of Apple's customers is of paramount importance to Apple, and Apple devotes significant resources to ensuring its power products meet industry safety standards and are subjected to rigorous testing for safety and reliability. For example, Apple's power adapters are UL listed and bear the UL logo, which designates an industry-standard safety certification required in many instances by the Consumer Products Safety Commission. Apple's examination of the counterfeit power products supplied by Mobile Star, however, show the counterfeits fall far short of the most basic safety standards. Pearson Decl. ¶¶ 7, 9.

Apple carefully performed safety tests on samples of the Mobile Star-supplied counterfeit power products. Apple put 11 of the adapters through the industry-standard High Potential (Voltage) or "Hipot" test. Each one failed that test. *Id.* ¶¶ 5-7. This means that lower voltage circuits in the units, because of improper spacing and/or insulation, come in contact with high voltage circuits and pose a risk of overheating or delivering a potentially lethal electric shock to the person operating the power adapter. *Id.* ¶ 7. Apple then took x-rays of the 11 adapters and

---

[4] The products associated with SKU/UPC 885909627306 were purchased by Apple from the Groupon product listing at https://www.groupon.com/deals/gg-apple-5w-usb-power-adapter-or-adapter-and-lightning-cable-bundle-2. Doan Decl. ¶ 56.

[5] The products associated with SKU/UPC 885909627450 were purchased by Apple from the Groupon product listing at http://www.groupon.com/deals/gg-apple-lightning-to-usb-cable. Doan Decl. ¶ 59.

confirmed that the internal components of each of them were configured differently to the components in genuine Apple power adapters. *Id.* ¶ 8.

Apple also visually examined the internal configuration of nine disassembled counterfeit adapters. Apple's engineers' visual inspection revealed improper soldering of internal wiring, and that many of these adapters were missing safety fuses, which are critical safety components that prevent overheating in the event of a power surge. *Id.* ¶ 9. All of the nine adapters that were visually inspected created a risk of overheating and fire. *See id.* ¶ 9; *see also* "UL Report on Counterfeit iPhone Adapters, A Report of the Dangers of Counterfeit UL Marked Apple iPhone Adaptors," September 16, 2016, http://library.ul.com/wp-content/uploads/sites/40/2016/09/10314-CounterfeitiPhone-WP-HighRes_FINAL.pdf, at 2. Many of the Mobile Star counterfeits were fraudulently stamped with the UL logo to hide not only the counterfeit nature of the products but the danger posed by those products. Doan Decl. ¶¶ 13, 17, 33, 39, 57.

Comments on Amazon.com from consumers who have bought counterfeit Apple power adapters and cables sold on the same ASINs that Apple purchased confirm that consumers have experienced the very problems that Apple's analysis showed were likely to arise:



Product Review from ASIN B012EWP2K, Doan Decl. Ex. F at 4.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

> ★☆☆☆☆ **Terrible! Overheats and nearly catches on fire**
> By Jason V. on June 22, 2016
> Offer Type: Apple 12W USB Power Adapter | Verified Purchase
>
> Charger is not an authentic Apple product. It gets extremely hot while charging so I have to give it breaks to cool off. The most recent time it got so hot it turned black. I'm extremely upset because this was a gift for a girl friend of mine who lives out of state. Very embarrassing. See the attached picture.
> I would like my money back for this garbage and have a real charger sent to me for free. Unacceptable!
>
> ▸ Comment | Was this review helpful to you? [Yes] [No]   Report abuse

Product Review from ASIN B00KML141G, Doan Decl. Ex. H at 5.

> ★☆☆☆☆ **Charger caught on fire.**
> By Amazon Customer on December 24, 2015
> Size: common | Package Type: Standard Packaging | Color: 00 - 1x Lightning Cable + 1x 5W Adapter | Verified Purchase
>
> After just a few hours of use on the very first day, the charger literally caught on fire!!! See the attached picture. I'm appalled that the seller and Amazon support selling a product like this. I'm extremely disappointed in my experience with this product after reading the reviews and selecting this out of the several available in the marketplace. Moreover, I bought three for my family because of the good reviews and pricing. Don't make the mistake that I did.
>
> Comment

Product Review from ASIN B012EWP2K, Doan Decl. Ex. F at 4.

> ★☆☆☆☆ **This item sucks! The Amazon rep I called told me to …**
> By Mark Valdez Picazo on March 5, 2015
> Verified Purchase
>
> This item sucks! The Amazon rep I called told me to throw it away because of a safety hazard. Don't buy this!
>
> ▸ Comment | 5 people found this helpful. Was this review helpful to you? [Yes] [No]   Report abuse

Product Review from ASIN B00O5DXXAM, Declaration of Nathan Shaffer, Ex. A.

Despite being put on notice by Apple, Mobile Star's counterfeiting of Apple products is ongoing and, as Apple just confirmed, indisputably extends beyond the power products Apple purchased from Amazon.com and Groupon. Through an investigator, Apple purchased counterfeit Apple-branded EarPods® headphones and Lightning® cables directly from Mobile Star. Declaration of Paul Stone-Jansen ¶¶ 4-6; Doan Decl. ¶¶ 50-54.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

APPLE'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:16-cv-06001-WHO

**B.  Apple's Unsuccessful Attempts to Gain Mobile Star's Cooperation**

Upon learning from Amazon.com that Mobile Star was the primary source of counterfeit products it was selling under 12 ASINs on Amazon.com, Apple demanded repeatedly that Mobile Star immediately stop distributing the counterfeits and provide information about Mobile Star's acquisition and distribution of the counterfeits.  Potter Decl. ¶¶ 3-11.  Mobile Star first stonewalled and failed to respond at all to Apple's letter dated June 7, 2016.  Apple then sent Mobile Star another letter on June 14, 2016.  *Id.* ¶¶ 3-4, Exs. A-B.  On June 22, 2016, Mobile Star responded to the second letter by promising to get back to Apple.  *Id.* ¶ 5, Ex. C.  But when Mobile Star finally did get back to Apple on July 8, 2016, it stated only that it had obtained the products from "reputable suppliers," without providing any information whatsoever about the "reputable suppliers," tried to shift the blame to Amazon.com, and challenged Apple to identify the specific accused products notwithstanding that Apple had already identified the products in its June 7, 2016 letter to Mobile Star.  *Id.* ¶ 6, Ex. D.  Nonetheless, Apple responded to Mobile Star on July 13, 2016 and provided it with, among other things, photographs of the counterfeit Apple products, including packaging and labeling, that Apple had purchased from Amazon.com.  Apple also repeated its demand for the information that Apple had requested over a month earlier.  *Id.* ¶ 7, Ex. E.

Mobile Star waited until August 3, 2016, to respond and, when it did, stated only that it would investigate the contents of the July 13, 2016, letter and respond very shortly.  *Id.* ¶ 8, Ex. F.  It took until September 1, 2016, for Mobile Star to get back to Apple in the form of an email requesting a telephone call to discuss Apple's July 13, 2016, email.  *Id.* ¶ 9, Ex. G.  But when Apple's and Mobile Star's representatives talked on September 6, 2016, Mobile Star still did not provide any of the information Apple had requested.  *Id.* ¶ 11.  Instead, Mobile Star took the position that, notwithstanding Amazon.com's clear identification of Mobile Star as the source of the Amazon.com counterfeits, someone else must have supplied Amazon.com with the counterfeit goods.  Mobile Star reiterated this position in a short email on September 22, 2016, and once again failed to provide Apple with any of the requested information.  *Id.* ¶ 10, Ex. G.  But Groupon's recent confirmation that it also sourced counterfeit Apple power products from

Mobile Star shows Mobile Star's "Amazon.com must be mistaken" defense is disingenuous and is further proof that Mobile Star has been deeply involved in the business of selling counterfeit Apple products. This defense is further discredited by Apple's undercover purchase of counterfeit Apple products directly from Mobile Star.

Mobile Star has left Apple with no reasonable option other than to sue and seek injunctive relief. Apple provided Mobile Star with multiple opportunities and more than reasonable time to cooperate with Apple (as the other suppliers identified by Amazon.com did when so requested by Apple). But Mobile Star's recent distribution of yet more counterfeit Apple products and its most recent failure to provide Apple with any of the information requested by Apple despite having several months to do so have justifiably exhausted Apple's patience.

### III.   THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION

#### A.   Legal Standard

To obtain preliminary injunctive relief, a party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

#### B.   Discussion

##### 1.   Apple is Likely to Succeed on the Merits.

Apple is likely to succeed on the merits of its trademark infringement and counterfeiting claims[6] as Apple has established that it purchased counterfeit Apple power products from Amazon.com and Groupon, and that Amazon.com and Groupon have unequivocally identified Mobile Star as the source for most of these counterfeits. In addition, an Apple investigator recently bought counterfeit Apple products directly from Mobile Star. Section 32 of the Lanham Act provides that there is trademark infringement or counterfeiting when:

(1) Any person who shall, without the consent of the registrant –

---

[6] Apple need only show that it is likely to succeed on "at least one basis of liability." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1074 (N.D. Cal. 2012); *see also S & C Elec. Co. v. Contreras*, No. C 11-00383 WHA, 2011 WL 673740, at *2 (N.D. Cal. Feb. 17, 2011) (granting preliminary injunction where movant was "likely to succeed on the merits of at least one of its eight claims for relief").

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, [. . .]

"To establish trademark infringement, the trademark owner must show (1) ownership of a valid, protectable trademark and (2) a likelihood of confusion caused by the use of the mark." *Bridgestone Brands, LLC v. Dastgah*, No. 16-CV-00906-BLF, 2016 WL 1070670, at *3 (N.D. Cal. Mar. 18, 2016) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999)). Apple satisfies both of these requirements and is thus likely to win on the merits.

First, Apple owns trademark registrations for each of the trademarks applied to the counterfeit products, the product listings, and the product packaging. These marks include the Apple Logo, the terms APPLE, IPHONE, MACBOOK AIR, LIGHTNING, and the design of the 5W USB power adapter. David Decl. ¶ 5, Exs. C-N (registrations); *see* Doan Decl. ¶¶ 6-43, 45-61, Exs. A-O. A trademark registration is *prima facie* evidence of the validity of the registered mark and of the registrant's ownership of the registered trademark. 15 U.S.C. §§ 1057(b), 1115(a); *Brookfield Commc'ns,* 174 F.3d at 1046-53. Given that Amazon.com and Groupon have identified Mobile Star as the primary source of the counterfeit Apple products they were selling, and Apple has caught Mobile Star directly selling counterfeit Apple products, there can be no serious dispute that Mobile Star used these marks in commerce when it sold or transported the products. *See* 15 U.S.C. § 1127 (marks are used in commerce when sold or transported in commerce). Mobile Star continues to sell counterfeit Apple products despite being put on notice by Apple that such sales are unlawful. But even if Mobile Star continues to claim that it acquired the products from "reputable suppliers" (who Mobile Star refuses to identify), "ignorance is no defense to violations of the Lanham Act." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004). "[S]ale[s] of counterfeit [products] bearing Plaintiff's marks,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

whether done intentionally or not, violate[] sections 32(1) and 43(a) of the Lanham Act." *Id.* at 1074.

The second prong of the infringement test is also met because Mobile Star's use of Apple's marks is likely to cause confusion. Indeed, "counterfeit marks are inherently confusing." *Ubiquiti Networks*, 2012 WL 2343670, at *14; *Phillip Morris USA Inc.*, 352 F. Supp. 2d at 1073; *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, No. CV 13-09221-SJO (FFMx), 2015 WL 9690322, at *4 (C.D. Cal. Sept. 29, 2015); *Microsoft Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148, 1157 (C.D. Cal. 2015); *Otter Products LLC v. Ace Colors Fashion, Inc.*, No. 2:14-cv-00141-ODW (ASx), 2014 WL 1512189, at *3 (C.D. Cal. Apr. 15, 2014). *See also Brookfield Commc'ns,* Inc., 174 F.3d at 1056 (holding that, if marks are virtually identical, and they are "used with identical products," then "likelihood of confusion would follow as a matter of course."). Because they are inherently confusing, "it is unnecessary to perform the step-by-step examination" of the Ninth Circuit's eight-factor *Sleekcraft* test. *Phillip Morris USA,* 352 F. Supp. 2d at 1073.

But even if the *Sleekcraft* factors were examined, likelihood of confusion would be clear.

The *Sleekcraft* factors to assess likelihood of confusion are (1) the strength of the plaintiff's mark; (2) the proximity of the parties' goods; (3) the similarity of the parties' marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods or services and the degree of care likely to be exercised by purchases; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the parties' product line. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

Apple's marks are very strong. The APPLE mark, among other Apple marks, is an arbitrary mark, and arbitrary marks "are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Many of Apple's registrations for Apple Marks are incontestable under 15 U.S.C. § 1065.[7] Moreover, Apple has

---

[7] As alleged in ¶ 21 of the Complaint, registration numbers 3,679,056, 3,229,791, 3,870,782, 3,669,402, 3,222,089, and 3,522,328 are incontestable. *See* USPTO records at
tsdr.uspto.gov/#caseNumber=77648705&caseType=SERIAL_NO&searchType=statusSearch;
tsdr.uspto.gov/#caseNumber=78910155&caseType=SERIAL_NO&searchType=statusSearch;
tsdr.uspto.gov/#caseNumber=77078484&caseType=SERIAL_NO&searchType=statusSearch;
tsdr.uspto.gov/#caseNumber=77975076&caseType=SERIAL_NO&searchType=statusSearch;

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

extensively used its marks and spent billions of dollars promoting its marks and building goodwill associated with these marks.  David Decl. ¶ 3, Ex A.  They are recognized not only in the United States but throughout the world.

As for the other *Sleekcraft* factors, both the goods and the marks of the parties here are identical.  This is, of course, what counterfeits are all about, and so the actual confusion that has already occurred (as evidenced by customer reviews) was inevitable.  Both the genuine and counterfeit products are sold through the same sales channel—such as listings on Amazon.com—making consumer confusion more than likely.  Indeed, consumers have every reason to believe they are buying genuine Apple products because the Amazon.com listings claim they are genuine Apple products as the example below shows:

**Apple A1385 OEM Authentic iPhone & iPad Travel USB Wall Charger - Bulk Packaging**
by Apple
★★★☆ ▼  38 customer reviews | 5 answered questions

List Price: ~~$15.99~~
       Price: **$7.62** Free shipping for Prime members when buying this Add-on Item. Details
You Save: $8.37 (52%)

**In Stock.**
Want it tomorrow, March 26? Add it to a qualifying order within **3 hrs 46 mins** and choose One-Day Shipping at checkout. Details
Ships from and sold by Amazon.com. Gift-wrap available.
Color: **00 - 1x 5W Adapter**

- Genuine Quality USB Wall Charger Power Adapter for iPhone/ iPod without Apple logo
- Output: 5V 1.0A
- Standard USB type A connector
- Input: 110-240V (Works Worldwide) Add-on Item
- Connects to any USB port

**Add-on Item**
This item is available because of the Add-on program
The Add-on program allows Amazon to offer thousands of low-priced items that would be cost-prohibitive to ship on their own. These items ship with qualif

28 new from $0.01    5 used from $1.63

Doan Decl. ¶ 12, Ex. C.

As for the degree of care of consumers, even consumers exhibiting a high degree of care would have no reason to suspect that products being offered on Amazon.com or Groupon as genuine Apple power products would actually be counterfeits sourced from Mobile Star.  As for intent, there is no reasonable inference that can be drawn from Defendants' use of Apple's exact

---

tsdr.uspto.gov/#caseNumber=78821058&caseType=SERIAL_NO&searchType=statusSearch;
tsdr.uspto.gov/#caseNumber=77371650&caseType=SERIAL_NO&searchType=statusSearch.

1  marks on identical products other than that they intend to confuse consumers into thinking their
2  products are genuine Apple products.  The likelihood of expansion of product line factor is
3  irrelevant here because Defendants' product line is already the same as Apple's with respect to
4  the goods at issue.  By any measure, Defendants' counterfeits create a likelihood of confusion.
5  Because Mobile Star's use of counterfeit Apple marks is likely to cause consumer
6  confusion, mistake, or deception, Apple is likely to succeed on its trademark infringement and
7  counterfeiting claim under the Lanham Act.

### 2. Apple's Reputation and Goodwill will Suffer Irreparable Harm.

9  Courts often find a likelihood of irreparable harm in trademark infringement cases
10 because the infringement takes away the trademark owner's control over its own reputation and
11 damages its goodwill.  In *Hand & Nail Harmony, Inc. v. ABC Nail and Spa Prods.*, No. SA CV
12 16-0969-DOC (JEMx), 2016 WL 3545524 (C.D. Cal. June 28, 2016), the court recently granted
13 relief against the defendant counterfeiters where the plaintiff offered evidence that it invested
14 "substantial resources in developing the goodwill and reputation" associated with its marks and
15 where there was evidence both of the low quality of the counterfeit products and customer
16 complaints about those products.  The Court found that "proliferation of cheap, low-quality
17 counterfeit products not only eviscerates Plaintiffs ability to control its mark, but grossly impacts
18 Plaintiff's' reputation and goodwill." *Id.* at *6, *8.  The harm to Apple is, if anything, even
19 greater given many of the counterfeit products here are dangerous.
20 Where a plaintiff has "no control" over the infringer's products bearing similar or
21 identical marks and the quality of those products, the plaintiff's goodwill and reputation is put at
22 risk.  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012).
23 This is particularly true where the plaintiff has "invested significant time in building up a strong
24 reputation over the course of several decades." *Id.*  The same is true here.  Apple has spent
25 billions of dollars over the last couple decades to provide the quality of product and service that
26 supports its enviable reputation and successful business.  David Decl. ¶ 3, Ex. A.  By shipping
27 fake Apple products that are not only inferior in performance but dangerous, Mobile Star both
28 reduces Apple's control over its own reputation and damages its goodwill.  *See eBay, Inc. v.*

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 12 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

*Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("[h]arm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief"); *Sprint Nextel Corp. v. Thuc Ngo*, No. C-12-02764 CW (EDL), 2012 WL 4127296, at *8 (N.D. Cal. Sept. 18, 2012), (finding plaintiff "suffered irreparable harm," including "dilution of its marks and loss to its reputation"); *Bridgestone Brands*, 2016 WL 1070670, at *4 (damage to a trademark owner's good will and business reputation constitute irreparable injury).

The customer complaints about the "Apple" products such as those supplied by Mobile Star show that this injury is not speculative. Many customer reviews express disappointment in the performance of the Apple-branded charging products that are in fact counterfeit and in some cases even report that these products exploded or damaged Apple mobile devices. Not only do these counterfeit Apple power products pose a risk to consumer safety, they are causing irreparable harm to Apple's goodwill and reputation. This is precisely the kind of evidence of harm that justifies a preliminary injunction.

### 3. The Balance of Equities Favors Apple.

The potential harm to Apple's brand and reputation vastly exceeds potential prejudice to Mobile Star if it cannot sell or otherwise dispose of the specific products it has counterfeited. As established previously, Apple will suffer harm to its reputation and goodwill, which outweighs any potential harm to Mobile Star. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Hand & Nail Harmony*, 2016 WL 3545524 at *7 (finding counterfeiter would suffer no legitimate hardship) (internal citation omitted). *See also Adidas Am., Inc. v. Soccer & Soccer, Inc.*, No. CV 13-7148-GW(VBKx), 2013 WL 11323120, at *4 (C.D. Cal. Oct. 25, 2013) (in granting preliminary injunction, noting that the balancing of the equities favored the trademark owner, not the counterfeiter); *Maxim Integrated Products, Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1036 (N.D. Cal. 2009) (finding the potential harm to the trademark owner's reputation outweighed any potential harm to the infringer). Moreover, any

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 13 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO

1 potential and unjustified economic harm that Mobile Star could suffer can be covered by a bond.
2 The balance of equities strongly tips in favor of Apple.

3         **4.**         **The Public Interest will be Served if Counterfeit Sales Cease.**

4     Granting a preliminary injunction to prevent trademark infringement serves the public
5 interest because it protects "the right of the public not to be deceived or confused." *Maxim*
6 *Integrated Products*, 654 F. Supp. 2d at 1036; *Bridgestone Brands, LLC,* 2016 WL 1070670, at
7 *4. But this case involves far more than deceiving the public. It also involves counterfeit
8 products that have the potential to endanger the public. Clearly, the public interest would be
9 served by preliminary injunctive relief.

10 **IV.**     **CONCLUSION**

11     Mobile Star's dishonest and dangerous counterfeiting of Apple products must stop.
12 Because Apple has established that all four *Winter* factors weigh in its favor, the Court should
13 grant Apple's motion for a preliminary injunction.

16 Dated: October 19, 2016                                          Orrick, Herrington & Sutcliffe LLP

18                                                                  By:     */s/ Thomas H. Zellerbach*
                                                                      THOMAS H. ZELLERBACH
                                                                         Attorneys for Plaintiff
                                                                             Apple Inc.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 14 -

APPLE'S MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:16-cv-06001-WHO